**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| BRENT WYLIE | : |
|       Plaintiff, | : |
| | : |
| v. | : |
| | :     **Jury Trial Demanded** |
| RED BULL NORTH AMERICA, INC. | : |
| a/k/a RED BULL | : |
|       Defendant | : |
| | : |

**CIVIL ACTION COMPLAINT**

Plaintiff, Brent Wylie, by and through his counsel, Tucker Law Group, LLC, by way of Complaint against Defendant, Red Bull North America, Inc. a/k/a Red Bull, upon causes of action, hereby complains and avers as follows:

**JURISDICTION AND VENUE**

1.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332 in that the parties are citizens of different states.

2.   Venue is proper in the Northern District of Georgia pursuant to 28 U.S.C.§ 1391 in so far as a substantial part of the events or omissions giving rise to the claim occurred within the geographical limits of this District.

## PARTIES

3.    Plaintiff Brent Wylie is an adult individual and citizen of the Commonwealth of Pennsylvania. At all times material hereto, Plaintiff was located in Atlanta, Georgia.

4.    Defendant, Red Bull North America, Inc., also known as Red Bull (hereinafter referred to as "Red Bull"), is a corporation or business entity with headquarters located at 1740 Stewart St. Santa Monica, CA 90404 USA.

5.    Red Bull is a manufacturer of beverage products including "energy drinks," which claim to "vitalize the body and mind" and "give you wings."

6.    Red Bull distributes its product across many, if not all, states and localities of the United States, including Atlanta, Georgia.

7.    Red Bull sells its products to the end user for consumption through various retailers, sellers, distributors and wholesalers.

8.    Red Bull also distributes its products internationally in 126 countries, although its products have been banned in Norway, Denmark and Uruguay due to its dangers to public health.

## FACTUAL BACKGROUND

9.   On August 13, 2011, Plaintiff was out with friends at a lake in Atlanta, Georgia, drinking vodka mixed with cranberry juice.

10.   Shortly thereafter Plaintiff went to a friend's house where he consumed more vodka and cranberry juice.

11.   Shortly thereafter Plaintiff walked to a nearby gas station and purchased three large cans of Red Bull energy drink (16 ounce cans) ("Red Bull energy drink"), which he took back to his friend's house.

12.   The three cans of the Red Bull energy drink were in a new and unopened condition when purchased by Plaintiff.

13.   Upon returning to his friend's house, Plaintiff opened one of the cans of Red Bull energy drink and mixed it with vodka and cranberry juice and consumed it.

14.   Immediately thereafter, Plaintiff consumed the remaining two cans of Red Bull energy drink.

15.   Plaintiff then drove to the Luxe Lounge, 1100 Crescent Ave Atlanta, GA 30309, to meet with friends.

16.   After exiting his vehicle, Plaintiff started feeling disoriented and dizzy and noticed that his keys had dropped to the sidewalk.

17.   As Plaintiff bent down to pick up the keys he collapsed to the ground striking his head on the sidewalk rendering him unconscious.

18.   Plaintiff was rushed via ambulance to Grady Hospital in Atlanta.

19.   Plaintiff was diagnosed at Grady Hospital with acute left sided hemiparesis and left facial drop secondary to a right MCA stroke.

20.   A right craniotomy (a surgical operation in which a bone flap is temporarily removed from the skull to access the brain. Craniotomies are performed on patients suffering from brain lesions or traumatic brain injury) was performed.

21.   Part of Plaintiff's skull was removed during the craniotomy and he remains facially deformed to this day.

22.   He also continues to undergo physical therapy for the effect of the right MCA stroke.

23.   Plaintiff has limited use of his left arm and left leg as a result of the right MCA stroke.

24.   Plaintiff had no prior history or family history of strokes, seizures, dizziness, brain injury or cranial injuries in any respect.

25.   Prior to this incident, Plaintiff had been in good health and had no medical conditions that predisposed him to suffer the medical conditions alleged herein.

26.   Plaintiff was 23 years of age at the time of the incident.

27.   Red Bull manufactured the Red Bull energy drink consumed by Plaintiff.

28.   The Red Bull energy drink was new property when first sold by Red Bull for human consumption.

29.   As a result of the conduct of Red Bull as alleged herein, Plaintiff suffered severe and permanent injuries to his head, face and skull, along with additional and ongoing injuries, the full extent are not yet known.

30.   Plaintiff suffered mental anxiety and anguish and severe shock to his nervous system and other injuries, the full extent of which are not yet known.

31.   As a result of the conduct of Red Bull as alleged herein, Plaintiff has in the past and will in the future undergo

severe pain and suffering as a result of which he has been in the past and will in the future be unable to attend to his usual duties and occupation all to his great financial detriment and loss.

32.  As a result of the conduct of Red Bull as alleged herein, Plaintiff has been compelled, in order to effectuate a cure for the aforesaid injuries, to expend large sums of money for medicine and medical attention and may be required to expend additional sums for the same purposes in the future.

33.  As a result of the conduct of Red Bull as alleged herein, Plaintiff has been prevented from attending to his usual and daily activities and duties, and may be so prevented for an indefinite time in the future, all to his great financial detriment and loss.

34.  As a result of the conduct of Red Bull as alleged herein, Plaintiff suffered permanent disfigurement and scarring.

## RED BULL ENERGY DRINKS

35.  Red Bull energy drinks are not soft drinks. When first sold in 1987, they were a completely new product, and forged the birth of a totally new product category – energy drinks.

36.  Due to the immediate and significant effects on the central nervous system of the human body, Red Bull quickly

became known as "speed in a can," "liquid cocaine," and a "legal drug."

37.  Red Bull is marketed as providing increased energy, endurance, reaction speed, alertness and concentration.

38.  Red Bull's slogan is "Red Bull gives you Wings."

39.  Red Bull energy drink cans are affixed with the label "Vitalizes body and mind."

40.  Red Bull's website begins with the slogan "Wings when you need them."

41.  Red Bull markets its energy drinks as a "functional beverage" which provides "various benefits."

42.  The "benefits" provided by Red Bull energy drinks are described by Red Bull in the following testimonials:

- "I have to stay sharp, energetic and focused all the time, whether it is before, during, or after a tough session on the water. Red Bull Energy Drink helps me do that."

- "Red Bull Energy Drink keeps me focused and energized so that I can compete at my best both on and off the field."

- "Red Bull Energy Drink is a great functional drink which can be really handy just before training or competition. Red Bull gives you wings."

43.  Red Bull claims that its products' "effects are recognized throughout the world by a variety of people such as top athletes, busy professionals, college students and travelers on long journeys."

44.  Red Bull claims that it "has been giving wings to people and ideas, setting many milestones in sports and culture."

45.  Red Bull points to the following people and their achievements to support its claim  that its energy drinks "give you wings": "Lindsey Vonn keeps breaking records"; "Dave Lama Became the First Person Ever to Scale the 3128 Meter High Cerro Torre [mountain] Using the Free Climbing Style";  "Sebastian Vettel and Red Bull Racing Claim Double F1 World Champions for Third Time"; "Successful Mission to the Edge of Space" by Felix Baumgartner, skydiver, daredevil and BASE jumper; and "Sébastien Loeb Becomes The First Driver Ever To Secure 9 World Titles In A Row And In Addition Grabbed The Gold Medal In Rallycross At The X-Games In L.A."

46.  Red Bull's website posts regular photos of individuals snowboarding, biking, surfing and performing other extreme and dangerous activities.

## RED BULL'S TARGET MARKETING OF YOUNG ADULTS

47.  Red Bull's marketing is specifically targeted at young people all across the United States.

48.  Red Bull energy drinks have gained significant popularity among drinkers between the ages of 21 and 35.

49.  Red Bull's marketing campaign towards young adults at bars and clubs has made its energy drinks wildly popular at colleges, universities, bars and clubs.

50.  Energy drinks are consumed by 30% to 50% of adolescents and young adults.

51.  Red Bull energy drinks are marketed to be consumed during the late hours of the night, at bars and clubs.

52.  In fact, Red Bull's website states as follows: "When to drink? While going out day and night. Red Bull is a self-evident guest at every party, club session, festival and concert. Like many DJs, B-boys and other artists you can benefit from Red Bull to ensure you get the most out of your days and nights.

53.  Red Bull further encourages consumption of its energy drinks at clubs and bars by sponsoring a school for deejays in New York City called the "Red Bull Music Academy."

## RED BULL'S HARM WHEN COMBINED WITH VODKA

54.   Red Bull is commonly combined with alcohol, particularly vodka, to create a new alcoholic beverage known and ordered as a "Vodka Red Bull" at bars and clubs.

55.   Classic cocktails such as gin and tonic or rum and coke are increasingly being replaced by drinks like Vodka Red Bull.

56.   Red Bull is aware of the frequent mixing of its products with alcohol in as much as it sued a number of bars for substituting other brands of energy drinks for its products when patrons ordered mixed drinks specifying Red Bull.

57.   Red Bull is and was specifically aware that young persons frequently and commonly combine the consumption of alcohol, including vodka, with its energy drinks.

58.   Consuming Red Bull energy drinks with alcohol is dangerous and threatening to human life and well-being.

59.   Consuming Red Bull energy drinks with alcohol is tantamount to mixing cocaine with heroin.

60.   Consumption of Red Bull energy drinks causes serious adverse effects, especially in adolescents and young adults,

including seizures, diabetes, cardiac abnormalities, and mood
and behavioral disorders.

61.  Consumption of Red Bull energy drinks increases heart
rate and blood pressure.

62.  Consumption of Red Bull energy drinks increases the
risk of stroke, seizure, cerebral vaculopathy, heart attack and
blood clots.

63.  Combining a Red Bull energy drink with alcohol doubles
the likelihood of harm suffered by a drinker.

64.  Young adults are twice as likely to be hurt and
require medical attention when consuming a mix of Red Bull
energy drink with alcohol, then those who did not add Red Bull
to an alcoholic cocktail.

65.  Caffeine, a key ingredient in Red Bull energy drinks,
changes alcohol's effects on the body.

66.  The mixture of Red Bull and alcohol creates a
concoction which is pharmacologically distinct from alcohol
alone.

67.  In January 2011, month before Plaintiff's stroke, the
U.S. Food and Drug Administration banned the sale of pre-mixed

alcoholic energy drinks, which it recognized as being very appealing to young, even underage drinkers.

68.  Mixing alcohol with Red Bull is just as dangerous as drinking the pre-mixed alcoholic energy drinks banned seven months before Plaintiff's stroke.

69.  Red Bull is aware of the above risks, but intentionally denies that they are applicable and in fact, has publicly stated that Red Bull's effects are equivalent to that of a cup of coffee.

## COUNT I

70.  Plaintiff incorporates by reference hereto the preceding paragraphs as well as all subsequent paragraphs as if set forth at length herein.

71.  Red Bull designed, manufactured, supplied, sold and placed on the market and into the stream of commerce a defective and unreasonably dangerous product, in the form of the aforementioned Red Bull energy drink, knowing that the product would reach consumers without substantial change to the condition in which it was sold and that, at the time the product left Red Bull's control, it was defective and in an unreasonably dangerous condition and was sold in the ordinary course of businesses.

72.  The Red Bull energy drink did not contain every element necessary to make it safe for its reasonably foreseeable use, particularly in connection with its known and frequent combination with alcohol.

73.  Plaintiff is an individual who used, consumed or was reasonably affected by the use or consumption of the Red Bull energy drink.

74.  The Red Bull energy drink contained either no or insufficient warnings.

75.  The Red Bull energy drink consumed by Plaintiff was defectively designed.

76.  The Red Bull energy drink was defectively and deceptively marketed.

77.  The Red Bull energy drink was not merchantable and reasonably suited for the use intended.

78.  The Red Bull energy drink was dangerous to an extent beyond which would be contemplated by the ordinary consumer who purchases it, such as Plaintiff, with the ordinary knowledge common to the community as to its characteristics.

79.  The Red Bull energy drink was not substantially altered, modified or abused in an unforeseeable manner.

80.   Plaintiff consumed the Red Bull energy drink in a proper manner and in a manner consistent with the way it was marketed.

81.   The Red Bull energy drink was defective and unsafe, and was not safe for its reasonably foreseeable use and subjected Plaintiff to serious harm.

82.   The Red Bull energy drinks' defects and Red Bull's failures include, but are not limited to, the following:

      a.   failing to adequately warn or instruct the consumer in connection with safe consumption of the energy drink;

      b.   failing to warn consumers of the energy drink of its dangerous and hazardous condition of which Red Bull was aware or should have been aware;

      c.   failing to provide adequate and appropriate information, warnings and directions in connection with the safe consumption of the energy drink;

      d.   failure to provide sufficient warnings as to the foreseeable defects of the energy drink;

      e.   failure to perform adequate testing and studies on the energy drink to determine its effects on the human body when consumed with alcohol;

      f.   failing to test the energy drink to determine whether it could be used for its intended purpose without injury to those persons who it is foreseeable could be injured and harmed from consuming it;

      g.   designing, manufacturing, marketing, selling, and distributing an unsafe and defective product;

      h.   failing to create a recipe that would have  been safe when consumed in connection with alcohol;

14

      i.   failing to design, manufacture, and sell the energy drink in a manner so as to render it safe for its intended purpose;

      j.   manufacturing the energy drink with a design defect;

      k.   failing to correct, remedy, repair, and/or eliminate the defective and/or hazardous condition of the energy drink when Red Bull was aware or should have been aware of its dangerous propensities.

83.  When the Red Bull energy drink was designed, manufactured, and placed into the stream of commerce for consumption by persons such as Plaintiff, Red Bull had access to and was aware of studies and research demonstrating its dangerous and hazardous properties, particularly when combined with alcohol.

84.  If Red Bull had heeded such studies and research, it would have prevented Plaintiff from suffering the serious and permanent injuries set forth herein.

85.  An alternative design was available that would have rendered the Red Bull energy drink safe and not defective.

86.  Red Bull manifested a conscious or reckless disregard for the rights of others and a conscious or reckless imposition of the risk of serious bodily injury to persons such as Plaintiff.

87.   The Red Bull energy drink's condition is the proximate cause of the injuries sustained by Plaintiff.

## COUNT II

88.   Plaintiff incorporates by reference hereto the preceding paragraphs as well as all subsequent paragraphs as if set forth at length herein.

89.   The aforesaid injuries and resulting damages to Plaintiff were proximately caused by the conduct of Red Bull, in that Red Bull researched, designed, developed, tested, manufactured, inspected, distributed, packaged, labeled, sold, supplied, marketed, promoted and/or advertised that the Red Bull energy drink was safe for its intended use, for which Red Bull is liable to Plaintiff.

90.   Plaintiff had reason to anticipate that danger may result from a particular use, including combining Red Bull energy drinks with alcohol, and Red Bull failed to give adequate warning of the danger.

91.   Red Bull either had reasonable knowledge, or consciously ignored such knowledge, of the dangers associated with the foreseeable use of its energy drinks.

16

92. Red Bull's statements and/or non-disclosures related to the energy drink were misrepresentations and/or non-disclosures of material fact.

93. At all material times hereto, Red Bull was engaged in the business as a manufacturer, seller, distributor, supplier, and/or vendor of the Red Bull energy drink.

94. Red Bull, through its advertising, labels, representations on containers, distribution, packaging, supplying, marketing and/or promoting, made public misrepresentations or non-disclosures of material fact concerning the character, safety and/or quality of the Red Bull energy drink.

95. As a result of Red Bull's misrepresentations and/or non-disclosures of material fact concerning the Red Bull energy drink, it is liable to Plaintiff.

96. The Red Bull energy drink was in a defective condition at the time that it was purchased and/or used by Plaintiff and was not substantially changed at the time of Plaintiff's consumption and injuries sustained.

97. In relying upon the misrepresentations and/or non-disclosures of material fact made by Red Bull, Plaintiff purchased and/or consumed the Red Bull energy drink in the

manner and for the purpose intended, as designed, developed, tested, manufactured, inspected, distributed, packaged, supplied, labeled, sold, marketed, promoted and/or advertised by Red Bull.

98.  As a direct and proximate result of the aforesaid advertisements, labels, misrepresentations and/or non-disclosures of material fact, Plaintiff sustained severe and permanent injuries as alleged above.

## COUNT III

99.  Plaintiff incorporates by reference hereto the preceding paragraphs as well as all subsequent paragraphs as if set forth at length herein.

100. The carelessness and negligence of the Defendants, jointly and severally, consisted of the following acts and/or omissions:

> a.   failing to use reasonable care and diligence in designing and marketing the Red Bull energy drink;

> b.   failing to exercise reasonable care under the circumstances;

> c.   improperly designing, marketing, labeling and advertising the Red Bull energy drink;

> d.   failing to warn consumers of the defective and dangerous properties of the energy drink of which Red Bull was aware or should have been aware;

e.    failing to provide sufficient warning as to the foreseeable defects and dangers in the energy drink;

f.    failing to correct, remedy, repair, and/or eliminate the defective condition of the energy drink where Red Bull was aware or should have been aware;

g.    failing to test or inspect the energy drink to determine whether it could be used for its intended purpose without injury to those persons who would foreseeably consume it;

h.    designing a beverage that was hazardous to persons who were likely to consume it;

i.    designing a beverage that is defective when consumed in the foreseeable manner and in the foreseeable misuses;

j.    failing to consider, or consciously ignoring, the tests, studies and research demonstrating the dangerous properties of the energy drink;

k.    failing to design, manufacture, market, sell and distribute the energy drink in a manner so  as to render it safe for its intended purpose;

l.    putting the energy drink into the stream of commerce with a design defect;

m.    putting the energy drink into the stream of commerce with a marketing defect.

101. As a result of the negligence of Red Bull, Plaintiff sustained severe and permanent injuries and damages as heretofore alleged.

## COUNT IV

102. Plaintiff incorporates by reference hereto the preceding paragraphs as well as all subsequent paragraphs as if set forth at length herein.

19

103. Plaintiff purchased the Red Bull energy drink directly from a retailer, seller or wholesaler of Red Bull energy drinks.

104. Red Bull offered an implied warranty of merchantability when manufacturing, designing, distributing, marketing, advertising and selling the Red Bull energy drink, which was consumed by Plaintiff.

105. An implied warranty existed that the Red Bull energy drink was merchantable.

106. The ordinary purpose of the Red Bull energy drink was for usage by consumers such as Plaintiff, and in the manner in which Plaintiff consumed it.

107. The Red Bull energy drink was not fit for the ordinary purpose for which it was intended, sold, marketed or advertised.

108. Red Bull breached the implied warranty associated with the Red Bull energy drink.

109. Red Bull knew of the dangerous and hazardous propensities of the Red Bull energy drink when it put it into the stream of commerce and sold or distributed it to retailers, sellers or wholesalers, including the one which sold the drink to Plaintiff.

110. As a result of the breach of the implied warranty, Plaintiff sustained severe and permanent injuries and damages as heretofore alleged.

### COUNT V

111. Plaintiff incorporates by reference hereto the preceding paragraphs as well as all subsequent paragraphs as if set forth at length herein.

112. Red Bull's marketing of its energy drinks, including the one consumed by Plaintiff, caused a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

113. Red Bull represented that the Red Bull energy drink consumed by Plaintiff had sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that the drink did not have.

114. Red Bull advertises its energy drinks with intent not to sell them as advertised.

115. Red Bull engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

116. Plaintiff sustained severe and permanent injuries and damages, as heretofore alleged, as a result of Red Bull's marketing, representation, advertising and wrongful conduct.

## JURY DEMAND

117. Plaintiff demands a trial by jury on the claims asserted herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court:

a.   Enter judgment in Plaintiff's favor and against Defendant for all legal and equitable relief available under the law, including but not limited to, monetary damages, interest, past and future mental anguish and emotional distress, medical expenses, and other compensatory damages in amounts to be determined at trial;

b.   Order Defendant to pay punitive damages to Plaintiff;

c.   Order Defendant to pay Plaintiff's attorneys' fees, costs, expenses, disbursements, and expert witness fees; and

d.   Grant such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

22

This 2nd day of August 2013.

Respectfully submitted,

DAVIS BOZEMAN LAW, PC


s/Robert O. Bozeman
Robert O. Bozeman
Georgia Bar No. 073561
Mawuli M. Davis
Georgia Bar No. 212029
Attorneys for Plaintiff


4153 B Flat Shoals Parkway- Suite 204
Decatur, Georgia 30034
(404) 244-2004
(404) 244-2020 fax


TUCKER LAW GROUP

s/Bacardi L Jackson
Bacardi L. Jackson
Georgia Bar No. 386052
Joe H. Tucker, Jr.
Attorneys for Plaintiff


One Penn Center at Suburban Station
1617 JFK Boulevard, Suite 1700
Philadelphia, PA  19103
(215) 875-0609
(215) 875-8143 fax